**CT Corporation**

**Service of Process
Transmittal**
12/21/2021
CT Log Number 540774575

TO:     David Brickman
        SONIDA SENIOR LIVING, INC.
        16301 QUORUM DR STE 160A
        ADDISON, TX 75001-6924

RE:     **Process Served in Florida**

FOR:    CSL Creekside FL, LLC  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | STEPHANIE HILLIS APRO ESTATE OF CHARLES J HUFF vs. CSL CREEKSIDE FL LLC |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 2021CA003084 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 12/21/2021 at 14:21 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  David Brickman  DBRICKMAN@CAPITALSENIOR.COM |
| | Email Notification,  PAM CONNOR  pconnor@sonidaliving.com |
| | Email Notification,  KATRINA KRWAWICZ  kkrwawicz@sonidaliving.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>1200 South Pine Island Road<br>Plantation, FL 33324<br>866-203-1500<br>DealTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

EXHIBIT
A



## PROCESS SERVER DELIVERY DETAILS

**Date:**                    Tue, Dec 21, 2021

**Server Name:**             JOSHUA WRIGHT

| | |
|---|---|
| Entity Served | CSL CREEKSIDE FL LLC, DBA THE WATERFORD AT CREEKS |
| Case Number | 2021CA003084 |
| Jurisdiction | FL |



**IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA**

**STEPHANIE HILLIS APRO ESTATE OF CHARLES J HUFF**

      PLAINTIFF,

Vs.                           CASE NO:   **2021 CA 003084**

                                   DIVISION:  **E**

**CSL CREEKSIDE FL LLC  DBA THE WATERFORD AT CREEKSIDE**

      DEFENDANT,

**SUMMONS**

**THE STATE OF FLORIDA:**
**To Each Sheriff of the State:**

  **YOU ARE COMMANDED** to serve this summons and a copy of the complaint in the above styled
cause upon the defendant **CSL CREEKSIDE FL LLC DBA THE WATERFORD AT CREEKSIDE**
**C T CORPORATION SYSTEM (REGISTERED AGENT) 1200 SOUTH PINE ISLAND ROAD**
**PLANTATION, FL 33324**

Each defendant is hereby required to serve written defenses to said complaint on

      plaintiff's attorney(s), whose address is

      **JACK DE LA PIEDRA**
      **6 TRISTAN WAY**
      **PENSACOLA BEACH, FL 32561**

within **20 days** after service of this summons upon you, exclusive of the day of service, and to file the
original of said written defenses with the Clerk of said Court either before service on said attorney or
immediately thereafter. If you fail to do so, a default will be entered against you for the relief demanded
in the complaint.

Witness, my hand and the seal of this Court on this **24th day of November, 2021**

PAM CHILDERS

CLERK OF THE CIRCUIT COURT

By: _Beth Phelps_

    Deputy Clerk

\* Except when suit is brought pursuant to Section 768.28, Florida Statutes, if the State of Florida, one of
its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the
time to be inserted as to it is 40 days.  When suit is brought pursuant to Section 768.28, Florida Statutes,
the time to be inserted is 30 days.

CASUM2053P

IN THE CIRCUIT COURT
IN AND FOR ESCAMBIA COUNTY, FLORIDA

Stephanie Hillis as Personal Representative of the
ESTATE OF CHARLES J. HUFF,

       Plaintiff,

vs.                                         Case No.:

CSL CREEKSIDE FL, LLC
d/b/a The Waterford at Creekside,

       Defendant.

_____/

## **COMPLAINT FOR DAMAGES**

       Plaintiff, STEPHANIE HILLIS, as Personal Representative of the ESTATE OF CHARLES J. HUFF, by and through his undersigned counsel, sues Defendant CSL CREEKSIDE FL, LLC, LLC (hereafter DEFENDANT WATERFORD) d/b/a The Waterford at Creekside and alleges:

GENERAL ALLEGATIONS

1.      This action is within the jurisdiction of this court for damages in excess of Thirty Thousand and 00/100 Dollars ($30,000.00), exclusive of interest and costs.

2.      At all times material to this cause of action, CHARLES J. HUFF was an adult resident of Escambia County, Florida.

3.      At all times material, CHARLES J. HUFF was a person who was suffering from the infirmities of aging to the extent that he was impaired in his ability to adequately provide for his own care and protection.

4.      At all times material, CHARLES J. HUFF was a resident of The Waterford at Creekside.

5.      CHARLES J. HUFF died on January 18, 2021. At all times material, STEPHANIE HILLIS is the duly appointed Personal Representative of the ESTATE OF CHARLES J. HUFF or the Executor *de son tort*.

6.      At all times material, DEFENDANT WATERFORD was licensed and authorized to do business as an assisted living facility in Florida, as The Waterford at Creekside, located in Escambia County, Florida. The Defendant was in the business of owning, managing and maintaining assisted living

facilities and related healthcare facilities, including The Waterford at Creekside, located in Escambia County, Florida.

7.   At all times material, DEFENDANT WATERFORD was the licensee of The Waterford at Creekside.

8.   DEFENDANT WATERFORD controlled the operation, and/or planning, and/or management, and/or budget, and/or quality control of The Waterford at Creekside. The authority exercised by DEFENDANT WATERFORD over the facility included, but was not limited to, control of marketing, and/or human resources management, and/or training, and/or staffing, and/or creation and implementation of all policy and procedures, and/or quality care assessment and compliance, and/or licensure and certification, and/or legal services, and/or financial, tax and accounting control through fiscal and managerial policies established by DEFENDANT WATERFORD.

9.   At all times material, DEFENDANT WATERFORD, was subject to the provisions of Chapter 429 of Florida Statutes, which sets the standards for operating assisted living facilities such as The Waterford at Creekside.

10.   At all times material, DEFENDANT WATERFORD had a statutorily mandated responsibility to comply with the minimum standards for the operation of assisted living facilities contained in the Assisted Living Facilities Act, Chapter 429, Florida Statutes.

11.   At all times material, DEFENDANT WATERFORD had a statutorily mandated responsibility to comply with the minimum standards for the operation of assisted living facilities promulgated by the Florida Department of Health and Rehabilitative Services and contained in the Florida Administrative Code 58A-5, because DEFENDANT WATERFORD was licensed and authorized to do business as an assisted living facility in Florida.

12.   All counts against DEFENDANT WATERFORD are based solely on custodial care issues, and any presuit pursuant to Chapter 766 is unnecessary.

13.   Plaintiff has complied with the assisted living facility presuit provisions set forth in Fla. Stat. §429.293(2) with respect to DEFENDANT WATERFORD.

14.   Plaintiff has satisfied all conditions precedent to the filing of this action with respect to DEFENDANT WATERFORD.

15.   Plaintiff's counsel certifies by signing this Complaint that a good faith investigation into the merits of this claim were made with respect to DEFENDANT WATERFORD.

16.   It has been necessary for STEPHANIE HILLIS, as Personal Representative of the ESTATE OF CHARLES J. HUFF, to retain the undersigned firm to prosecute this action and has agreed to pay said firm a reasonable fee for its services.

COUNT 1

CHAPTER 400 NEGLIGENCE (WRONGFUL DEATH) AGAINST
CSL CREEKSIDE FL, LLC, LLC d/b/a The Waterford at Creekside

Plaintiff realleges and incorporates by reference fully herein the General Allegations of this Complaint above and further alleges:

17.   At all times material, DEFENDANT WATERFORD had a statutorily mandated responsibility to CHARLES J. HUFF, as set forth in Fla. Stat. § 429.29(3), to exercise reasonable care or "that degree of care which a reasonably careful licensee, person, or entity would use under like circumstances," which responsibility included assuring her the following residents' rights under Florida Statutes §429.28:

(a)    providing adequate and appropriate healthcare and protective and support services to CHARLES J. HUFF.

18.   That DEFENDANT WATERFORD's obligation to provide reasonable care to CHARLES J. HUFF is non-delegable such that DEFENDANT WATERFORD had direct liability for violations, deprivations and infringements by any person or entity under DEFENDANT WATERFORD's control, direct or indirect, including their employees, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies or pools, or caused by DEFENDANT WATERFORD's policies, and procedures, whether written or unwritten, or common practices.

19.   That in addition to DEFENDANT WATERFORD's direct obligation to provide reasonable care as alleged in the preceding paragraph, DEFENDANT WATERFORD had vicarious liability for the negligent acts and omissions of all persons or entities under DEFENDANT WATERFORD's control either direct or indirect including its employees, agents, consultants and independent contractors, whether in-house or outside entities, individuals, agencies or pools causing any violations, deprivations or infringements.

20.   That the duty to provide reasonable care in the immediately preceding paragraphs include, but are not limited to, proper training and supervision; proper hiring, background and referral checks; and proper retaining and dismissing of employees, agents, consultants and independent contractors, as well as providing adequate staffing.

21.   CHARLES J. HUFF was deprived of reasonable care and the right to adequate and appropriate healthcare and protective and support services under §429.28, by the *cumulative* negligent acts and/or omissions of DEFENDANT WATERFORD's employees and agents which include, but were not limited to, the following:

a)  failing or refusing to protect and/or prevent CHARLES J. HUFF from foreseeable harm, including but not limited to suffering poor hygiene and loss of dignity, embarrassment and humiliation in connection with the foregoing;

b)  failing or refusing to adequately assist CHARLES J. HUFF with maintaining proper hygiene;

c)  failing or refusing to protect and/or prevent CHARLES J. HUFF from foreseeable harm, including but not limited to suffering development and deterioration of toe wounds and/or infection, and unnecessary fear and severe pain in connection with the foregoing

d)  failing or refusing to protect and/or prevent CHARLES J. HUFF from foreseeable harm, including but not limited to suffering medication error(s) and unnecessary fear and severe pain in connection with the foregoing;

e)  failing or refusing to properly observe CHARLES J. HUFF take his medication as required by Fla. Admin. Code R. 59A-36.008 (3)(d);

f)  failing or refusing to report to CHARLES J. HUFF'S refusal or suspected refusal to take his medication to his health care provider as required by Fla. Admin. Code R. 59A-36.008 (3)(d);

g)  failing or refusing to properly document CHARLES J. HUFF'S refusal or suspected refusal to take his medication as required by Fla. Admin. Code R. 59A-36.008 (3)(d) .

h)  failing or refusing to properly recognize the development and deterioration of infected sores and/or wounds on CHARLES J. HUFF's toes and failing to obtain treatment to prevent the worsening of same;

i)  failing or refusing to provide adequate and appropriate protective and support services to CHARLES J. HUFF;

j)  failing or refusing to properly supervise CHARLES J. HUFF;

k)  failing or refusing to develop, implement, and update an adequate and appropriate resident care plan to meet the custodial needs of CHARLES J. HUFF;

l)  failing or refusing to maintain records which contain accurate and sufficient information regarding the care and treatment of CHARLES J. HUFF;

m)  failing or refusing to appropriately monitor CHARLES J. HUFF and recognize significant signs and symptoms of change in his health condition;

n)  failing or refusing to properly notify the family and physicians of CHARLES J. HUFF of significant changes in his health status;

o)  failing or refusing to properly supervise staff;

p)  failing or refusing to properly train staff;

q)  failing or refusing to incentivize staff through adequate compensation;

r)  improper retention of staff;

s)  inadequate staffing;

t)  failing or refusing to protect the dignity of CHARLES J. HUFF;

u)  failing or refusing to maintain records, which contain sufficient and/or accurate information to justify the treatment of CHARLES J. HUFF, and failing to document the results;

v)  failing or refusing to appropriately monitor the vital signs of CHARLES J. HUFF;

w)  failing or refusing to timely transfer CHARLES J. HUFF to a hospital when his condition deteriorated; and

x)  failing or refusing to follow physician orders.

22.  As a direct and proximate result of the failure of DEFENDANT WATERFORD to provide reasonable care and assure his right to adequate and appropriate healthcare and protective and support services under §429.28, CHARLES J. HUFF suffered damages, including loss of dignity;

humiliation; bodily injury; pain and suffering, disability, physical impairment; disfigurement; mental anguish, inconvenience; loss of capacity to enjoy life; discomfort; aggravation of existing diseases or physical defect; medical, hospital and nursing expenses and death on January 18, 2021.

23.    Pursuant to Florida Statute §768.18, survivors of CHARLES J. HUFF (who are also potential beneficiaries of a recovery for wrongful death) include the following:

a)    There was no surviving spouse at the time of CHARLES J. HUFF's death;

b)    STEPHANIE HILLIS, adult child.

24.    Pursuant to Florida Statute §768.21, minor children of the decedent, and all children of the decedent if there is no surviving spouse, may also recover for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury. The previously listed survivors suffered said losses.

WHEREFORE, Plaintiff, STEPHANIE HILLIS, as Personal Representative of the ESTATE OF CHARLES J. HUFF, deceased, and on behalf of his survivors, demands judgment against CSL CREEKSIDE FL, LLC, LLC d/b/a The Waterford at Creekside for damages, together with costs and prejudgment interest, and a trial by jury on all issues triable as a matter of right.  Plaintiff reserves the right to amend to allege a cause of action for punitive damages at a later date.

COUNT 2

CHAPTER 429 NEGLIGENCE (SURVIVAL DAMAGES) AGAINST
CSL CREEKSIDE FL, LLC, LLC d/b/a The Waterford at Creekside

Plaintiff realleges and incorporates by reference fully herein the General Allegations of this Complaint above and further alleges:

25.    At all times material, DEFENDANT WATERFORD had a statutorily mandated responsibility to CHARLES J. HUFF, as set forth in Fla. Stat. § 429.29(3), to exercise reasonable care or "that degree of care which a reasonably careful licensee, person, or entity would use under like circumstances," which responsibility included assuring her the following residents' rights under Florida Statutes §429.28:

(a)    providing CHARLES J. HUFF access to adequate and appropriate health care consistent with established and recognized standards within the community.

(b)    providing a safe and decent living environment, free form abuse and neglect to CHARLES J. HUFF; and

(c)    treating CHARLES J. HUFF with consideration and respect and with due recognition of personal dignity, individuality, and the need for privacy.

26.    That DEFENDANT WATERFORD's obligation to provide reasonable care to CHARLES J. HUFF
       is non-delegable such that DEFENDANT WATERFORD had direct liability for violations,
       deprivations and infringements by any person or entity under DEFENDANT WATERFORD's
       control, direct or indirect, including their employees, agents, consultants and independent
       contractors, whether in-house or outside entities, individuals, agencies or pools, or caused by
       DEFENDANT WATERFORD's policies, and procedures, whether written or unwritten, or
       common practices.

27.    That in addition to DEFENDANT WATERFORD's direct obligation to provide reasonable care as
       alleged in the preceding paragraph, DEFENDANT WATERFORD had vicarious liability for the
       negligent acts and omissions of all persons or entities under DEFENDANT WATERFORD's
       control either direct or indirect including its employees, agents, consultants and independent
       contractors, whether in-house or outside entities, individuals, agencies or pools causing any
       violations, deprivations or infringements.

28.    That the duty to provide reasonable care in the immediately preceding paragraphs include, but are
       not limited to, proper training and supervision; proper hiring, background and referral checks; and
       proper retaining and dismissing of employees, agents, consultants and independent contractors, as
       well as providing adequate staffing.

29.    CHARLES J. HUFF was deprived of reasonable care and the residents' rights enumerated at the
       beginning of this count by the *cumulative* negligent acts and/or omissions of DEFENDANT
       WATERFORD's employees and agents which include, but were not limited to, the following:

       a)     failing or refusing to protect and/or prevent CHARLES J. HUFF from foreseeable harm,
              including but not limited to suffering poor hygiene and loss of dignity, embarrassment and
              humiliation in connection with the foregoing;
       b)     failing or refusing to adequately assist CHARLES J. HUFF with maintaining proper
              hygiene;
       c)     failing or refusing to protect and/or prevent CHARLES J. HUFF from foreseeable harm,
              including but not limited to suffering development and deterioration of toe wounds and/or
              infection, and unnecessary fear and severe pain in connection with the foregoing
       d)     failing or refusing to protect and/or prevent CHARLES J. HUFF from foreseeable harm,
              including but not limited to suffering medication error(s) and unnecessary fear and severe
              pain in connection with the foregoing;
       e)     failing or refusing to properly observe CHARLES J. HUFF take his medication as required
              by Fla. Admin. Code R. 59A-36.008 (3)(d);
       f)     failing or refusing to report to CHARLES J. HUFF'S refusal or suspected refusal to take
              his medication to his health care provider as required by Fla. Admin. Code R. 59A-36.008
              (3)(d);
       g)     failing or refusing to properly document CHARLES J. HUFF'S refusal or suspected refusal
              to take his medication as required by Fla. Admin. Code R. 59A-36.008 (3)(d) .

h)    failing or refusing to properly recognize the development and deterioration of infected sores and/or wounds on CHARLES J. HUFF's toes and failing to obtain treatment to prevent the worsening of same;

i)    failing or refusing to provide adequate and appropriate protective and support services to CHARLES J. HUFF;

j)    failing or refusing to properly supervise CHARLES J. HUFF;

k)    failing or refusing to develop, implement, and update an adequate and appropriate resident care plan to meet the custodial needs of CHARLES J. HUFF;

l)    failing or refusing to maintain records which contain accurate and sufficient information regarding the care and treatment of CHARLES J. HUFF;

m)    failing or refusing to appropriately monitor CHARLES J. HUFF and recognize significant signs and symptoms of change in his health condition;

n)    failing or refusing to properly notify the family and physicians of CHARLES J. HUFF of significant changes in his health status;

o)    failing or refusing to properly supervise staff;

p)    failing or refusing to properly train staff;

q)    failing or refusing to incentivize staff through adequate compensation;

r)    improper retention of staff;

s)    inadequate staffing;

t)    failing or refusing to protect the dignity of CHARLES J. HUFF;

u)    failing or refusing to maintain records, which contain sufficient and/or accurate information to justify the treatment of CHARLES J. HUFF, and failing to document the results;

v)    failing or refusing to appropriately monitor the vital signs of CHARLES J. HUFF;

w)    failing or refusing to timely transfer CHARLES J. HUFF to a hospital when his condition deteriorated; and

x)    failing or refusing to follow physician orders.

30.   As a direct and proximate result of the failure of DEFENDANT WATERFORD to provide reasonable care and assure the residents rights enumerated at the beginning of this count, CHARLES J. HUFF suffered damages, including loss of dignity; humiliation; bodily injury; pain and suffering, disability, physical impairment; disfigurement; mental anguish, inconvenience; loss of capacity to enjoy life; discomfort; aggravation of existing diseases or physical defect; medical, hospital and nursing expenses.

WHEREFORE, Plaintiff, STEPHANIE HILLIS, with Power of Attorney for CHARLES J. HUFF, demands judgment against CSL CREEKSIDE FL, LLC, LLC d/b/a The Waterford at Creekside for compensatory damages based upon the negligent acts and omissions stated above, and further demands costs, prejudgment interest, and a trial by jury on all issues triable as a matter of right.  Plaintiff reserves the right to amend to allege a cause of action for punitive damages at a later date.

RESPECTFULLY SUBMITTED this 23rd day of November 2021.

*/s/ Jack De La Piedra*
Jack De La Piedra, Esq.
FL Bar No.  0020852
**DE LA PIEDRA LAW FIRM, P.A.**
*Attorney for the Plaintiff*
100 Northcliffe Drive #730
Gulf Breeze, FL  32562
P  850.932.8560  F  850.932.8129
jack@delapiedralawfirm.com
heather@delapiedralawfirm.com
paralegal@delapiedralawfirm.com

IN THE CIRCUIT COURT
IN AND FOR ESCAMBIA COUNTY, FLORIDA

Stephanie Hillis as Personal Representative of the
ESTATE OF CHARLES J. HUFF,

        Plaintiff,

vs.                                                    Case No.:  2021 CA 003084

CSL CREEKSIDE FL, LLC
d/b/a The Waterford at Creekside,

        Defendant.

_____/

### PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO
### DEFENDANT CSL CREEKSIDE FL, LLC d/b/a The Waterford at Creekside

COMES NOW, the Plaintiff, by and through the undersigned attorney, and in accordance with the applicable rules of civil procedure, propounds the following request for admissions to Defendant, and requests answers or objections in writing within forty-five (45) days from the date of service in accordance with Fla.R.Civ.P. 1.370(a).

1      Admit that while Charles J. Huff was a resident at The Waterford at Creekside, Defendant owed Charles J. Huff a statutory duty of care.

2.     Admit that while Charles J. Huff was a resident at The Waterford at Creekside, Defendant was required to ensure Charles J. Huff's rights as a resident were upheld by its staff.

3.     Admit that while Charles J. Huff was a resident at The Waterford at Creekside, all of its caregivers were required to follow all of Charles J. Huff's treating physician's orders for him.

4.     Admit that while Charles J. Huff was a resident at The Waterford at Creekside, all of its caregivers were required to follow the initial nursing assessment for Charles J. Huff.

5.     Admit that the Charles J. Huff was dependent upon the staff and employees of The Waterford at Creekside to assist him in accomplishing his activities of daily living.

6.     Admit that the staff or administration of The Waterford at Creekside failed to keep accurate records of Charles J. Huff's care and treatment while he was a resident at The Waterford at Creekside.

7.     Admit that Charles J. Huff's general medical condition deteriorated while he was a resident at The Waterford at Creekside.

8.     Admit that Charles J. Huff's skin was evaluated upon admission to The Waterford at Creekside.

9.     Admit that Charles J. Huff's skin was intact upon admission to The Waterford at Creekside.

10.    Admit that Charles J. Huff was noted to be at high risk for skin breakdown and/or decubitus ulcers upon admission to The Waterford at Creekside.

11.    Admit that some of Charles J. Huff's toes experienced skin breakdown while at The Waterford at Creekside.

12.    Admit that Charles J. Huff developed one or more wounds to some of his toes while at The Waterford at Creekside.

13.    Admit that CHARLES J. HUFF experienced some infected toes while he was a resident at The Waterford at Creekside.

14.    Admit that The Waterford at Creekside ordered a betadine bath for CHARLES J. HUFF's right foot.

15.    Admit that some of CHARLES J. HUFF's toes were gangrenous while he was a resident at The Waterford at Creekside.

16.    Admit that Charles J. Huff experienced injury to some of his toes as a result of skin breakdown that occurred while he was a resident at The Waterford at Creekside.

17.    Admit that Charles J. Huff died as a result of complications related to skin breakdown to some of his toes that occurred while he was a resident at The Waterford at Creekside.

18.    Admit that, with proper supervision, Charles J. Huff's skin breakdown to his toes could have been prevented.

19.    Admit that, with appropriate skin breakdown precautions and interventions, Charles J. Huff's skin breakdown to his toes could have been prevented.

20.    Admit that, with appropriate turning, repositioning, and offloading pressure, Charles J. Huff's skin breakdown to his toes could have been prevented.

21.    Admit that The Waterford at Creekside failed to properly institute skin breakdown precautions and interventions when it knew that Charles J. Huff was at high risk for skin breakdown to his toes.

22.    Admit that The Waterford at Creekside failed to timely notify a physician of the skin breakdown to some of Charles J. Huff's toes, which he experienced while at the facility.

23.    Admit that The Waterford at Creekside failed to timely transfer Charles J. Huff to a hospital, following the development of skin breakdown to some of his toes while at the facility.

24.    Admit that CHARLES J. HUFF did not take his medication as prescribed while at The Waterford at Creekside.

25.    Admit that The Waterford at Creekside did not know that CHARLES J. HUFF did not consistently take his medication while at The Waterford at Creekside.

26.    Admit that The Waterford at Creekside did not know that CHARLES J. HUFF hid his medication (pills) under his tongue and then later spit his medication out without anyone seeing him do so.

27.     Admit that The Waterford at Creekside knew that CHARLES J. HUFF hid his medication (pills) under his tongue and then later spit his medication out without anyone seeing him do so.

28.     Admit that The Waterford at Creekside failed to properly observe CHARLES J. HUFF take his medication as required by Fla. Admin. Code R. 59A-36.008 (3)(d) while at the facility.

29.     Admit that The Waterford at Creekside failed to report CHARLES J. HUFF'S refusal or suspected refusal to take his medication to his health care provider as required by Fla. Admin. Code R. 59A-36.008(3)(d).

30.     Admit that The Waterford at Creekside failed to properly document CHARLES J. HUFF'S refusal or suspected refusal to take his medication as required by Fla. Admin. Code R. 59A-36.008 (3)(d).


DATED this 17th day of December 2021.

*/s/ Jack De La Piedra*
Jack De La Piedra
FL Bar No.  0020852
**DE LA PIEDRA LAW FIRM, P.A.**
*Attorney for the Plaintiff*
6 Tristan Way
Pensacola Beach, FL  32561
P  850.932.8560  F  850.932.8129
jack@delapiedralawfirm.com
heather@delapiedralawfirm.com
paralegal@delapiedralawfirm.com

IN THE CIRCUIT COURT
IN AND FOR ESCAMBIA COUNTY, FLORIDA

Stephanie Hillis as Personal Representative of the
ESTATE OF CHARLES J. HUFF,

       Plaintiff,

vs.                                   Case No.:  2021 CA 003084

CSL CREEKSIDE FL, LLC
d/b/a The Waterford at Creekside,

       Defendant.

_____/

### PLAINTIFF'S FIRST INTERROGATORIES TO
### DEFENDANT CSL CREEKSIDE FL, LLC d/b/a The Waterford at Creekside

COMES NOW, the Plaintiff, by and through the undersigned attorney, and in accordance with the applicable rules of civil procedure, propounds the following interrogatories to Defendant, and requests answers in writing and under oath within forty-five (45) days from the date of service in accordance with Fla.R.Civ.P 1.340.

### INSTRUCTIONS

(a)    These Interrogatories are continuing in character so as to require you to file supplementary answers if you obtain further or different information before trial.

(b)    Unless otherwise stated, these Interrogatories refer to the time, place, and circumstances of the occurrence mentioned or complained of in the Complaint.

(c )    Where name and identity of a person is required, please state full name, home address and also business address, if known.

(d)    Where knowledge or information in possession of a party is requested, such request includes knowledge of the party's agents, representatives, and unless privileged, his attorneys.  When answer is made by corporate defendant, state the name, address and title of persons supplying the information and making the affidavit, and announce the source of his or her information.

(e)    The pronoun "you" refers to the party to whom the Interrogatories are addressed and the parties mentioned in clause (d).

(f)    "Facility" refers to the Defendant nursing home or assisted living facility.

(g)    "Resident" refers to the individual who resided at the Defendant nursing home or assisted living facility and whose injuries are alleged in the Complaint.

"WHEN A PARTY WITHHOLDS INFORMATION OTHERWISE DISCOVERABLE UNDER THESE RULES BY CLAIMING THAT IT IS PRIVILEGED OR SUBJECT TO PROTECTION AS TRIAL PREPARATION MATERIAL, THE PARTY SHALL MAKE THE CLAIM EXPRESSLY AND SHALL DESCRIBE THE NATURE OF THE DOCUMENTS, COMMUNICATIONS, OR THINGS NOT PRODUCED OR DISCLOSED IN A MANNER THAT, WITHOUT REVEALING INFORMATION ITSELF PRIVILEGED OR PROTECTED, WILL ENABLE OTHER PARTIES TO ASSESS THE APPLICABILITY OF THE PRIVILEGE OR PROTECTION." FLA. STAT. 1.280(b)(6).

1.  What is the name and address of the person answering these interrogatories, and, if applicable, the person's official position or relationship with the party to whom the interrogatories are directed?

2.  List the individual(s) or entity who has authority to hire or fire the facility's administrator or director of nursing.

3.  List the individual(s) or entity who has authority over the staffing levels at the facility.

4.  List the individual(s) or entity who has authority to establish the facility's budget.

5.  List the individual(s) or entity who has authority to implement and enforce the policies and procedures of the facility.

6.  Describe any and all policies of insurance and/or agreement(s), including any excess liability policies, which you contend cover or may cover you for the allegations set forth in plaintiff's complaint, detailing as to such policies the name of the insurer, the number of the policy, the effective dates of the policy, the available limits of liability, and the name and address of the custodian of the policy.

7.  Is the insurance policy(ies) identified in the preceding interrogatory a "wasting policy"? If so, state the amount of coverage left on the policy at the time the interrogatories are answered.

8.  Are there any other claims being made on the policy(ies) referenced in the preceding interrogatory. If so, state the number of competing claims, the names of the individuals making those claims, the names, addresses and telephone numbers of the attorneys making those claims and the status of settlement negotiations of those claims.

9.  Provide the dates that the Resident was at the facility. If the Resident left the facility for more than 24 hours, provide the date(s) he/she left, the date(s) he/she returned, the reason(s) he/she left and the place(s) that he/she went to.

10. Identify fully the following personnel employed by the facility (1) during the time the resident was at the facility and (2) at the present time, and state the dates of service for each:
    Administrator
    Assistant Administrator

Director of Nursing

Assistant Director of Nursing

Personnel Director

Person responsible for billing for goods and/or services

Person responsible for purchasing goods and/or services

Medical Director

Head of Physical Therapy Department

11.     Did the facility utilize a computer system to maintain notes, records, communications, billing, or any other information concerning the resident or between the employees of the facility during the resident's stay at the facility?  If so, provide the complete name and address of the corporate representative with the most knowledge concerning the computer system.

12.     Please identify fully each outside consultant utilized by the facility, during the time the resident was at the facility, including but not limited to dietary consultant, records consultant, physical therapy consultant, nursing consultant, wound care specialists, laboratory services or pharmacy consultant.

13.     Did the resident receive care of treatment by a home health agency or home health aide or outside nurse while he/she was a resident at the facility?  If so, provide the complete name and address of the individual or entity that was providing the care and the dates that care was given.

14.     Does the facility have in its custody or control any records of accidents or unusual incidents referring in any way to the Resident, including but not limited to all reports of medication errors, falls, injuries, treatment errors, skin breakdown, assaults or invasions by staff or residents, and thefts of resident property?  If the facility has any such reports in its custody or control, please state (1) the name of each such report, (2) the date of each such report, (3) any and all persons identified in each such report, (4) the name and job title of the individual having custody or control report, and (5) the current location of each report.

15.     Please list the date and substance of any investigation which the facility knows or believes was conducted by any governmental agency concerning the resident, including, but no limited to, the Agency for Health Care Administration, Long Term Care Ombudsman, Department of Health and Rehabilitative Services, Department of Elder Affairs, Department of Children and Family Services, or law enforcement offices, together with the name and address of the agency that conducted the investigation.

16.     Was the resident ever a sampled resident or a subject of an AHCA survey?  If so, please state the date of the survey and the resident number.

17.    List the name(s), address(es) and telephone numbers of any persons (including family members) who are believed or known by you, your agents, or your attorneys to have any knowledge concerning the resident's alleged injury(ies) or any of the issues in this lawsuit; and specify with particularity the subject matter about which the witness has knowledge.

18.    Describe in detail how the resident's alleged injury(ies) occurred, including all actions taken and by whom to prevent or mitigate said injury(ies).

19.    Provide the complete name(s), address(es) and telephone numbers of any roommates of the resident during his/her residency and the name(s), address(es) and telephone number(s) of any other residents or their family members who may have witnessed any of the resident's alleged injury(ies) or know facts relevant to the issues in this case, pursuant to *Sovereign Healthcare of Port St. Lucie, LLC v. Fernandes*, 132 So. 3d 855 (Fla. 4th DCA 2013).

20.    Please state the name of the individual(s) whom would be most knowledgeable about staffing during the Plaintiff's residency and would be best able to answer the next question.

21.    Please state the staff to resident ratio, if known, during the month within which the injury(ies) occurred, which may be set forth specifically in the Presuit Notice.  Otherwise, please state the average staff to resident ratio for each quarter during the Plaintiff's residency.

22.    Have you heard or do you know about any statement or remark made by or on behalf of any party to this lawsuit?  If so, state the name and address of each person who made the statement or statements, the name and address of each person who heard it, and the date, time and place, and substance of each statement.

23.    State the name and address of every person (including family members) known to the you, your agents, your attorneys who has knowledge about, or possession, custody, and/or control of any video, photograph and/or written or recorded statement concerning any fact or issue involved in this controversy; and describe as to each, what item such person has, the name and address of the person who took or prepared it, the date it was taken or prepared, and state the name and address of the present custodian of each.

24.    State the facts and law upon which you rely for each affirmative defense in your Answer.

25.    To the extent that any of your responses to any of Plaintiff's First Request for Admissions is other than an unqualified admission, list all facts on which you based any part of your response that is not an unqualified admission, identify all documents memorializing each such fact, and identify all persons with knowledge of each such fact.

26.    What is the name and address of the person who responded to or will be responding to Plaintiff's First Request for Admissions to CSL CREEKSIDE FL, LLC d/b/a The Waterford at Creekside?

_____

**CSL CREEKSIDE FL, LLC**
**d/b/a The Waterford at Creekside**

STATE OF _____

COUNTY OF _____


        BEFORE ME, the undersigned authority, personally appeared this day _____, to me known and known to be the person in and who executed the foregoing instrument as _____, and acknowledged before me that he/she executed the same.

        IN WITNESS WHEREOF, I have hereunto set my hand and seal this _____ day of _____, 20_____.


_____

NOTARY PUBLIC

My Commission Expires:_____

IN THE CIRCUIT COURT
IN AND FOR ESCAMBIA COUNTY, FLORIDA

Stephanie Hillis as Personal Representative of the
ESTATE OF CHARLES J. HUFF,

      Plaintiff,

vs.                                         Case No.:  2021 CA 003084

CSL CREEKSIDE FL, LLC
d/b/a The Waterford at Creekside,

      Defendant.

_____/

### PLAINTIFF'S FIRST REQUEST FOR PRODUCTION TO DEFENDANT CSL CREEKSIDE FL, LLC d/b/a The Waterford at Creekside

COMES NOW the Plaintiff, by and through the undersigned attorney, pursuant to Fla.R.Civ.P. 1.350, and hereby propounds the following request for production to Defendant.  These requests encompass all documents, items, and things as set forth and defined in Fla.R.Civ.P. 1.350(a).  The Defendant shall serve a written response to the undersigned within 45 days after service of this request.

### INSTRUCTIONS

(a)     The term "Defendant" refers to the person or persons to whom these requests are directed, including all persons working on behalf of such person or under such person's direction or control, including attorneys and insurance representatives.

(b)     "Facility" refers to the Defendant nursing home or assisted living facility.

(c)     "Resident" refers to the individual who resided at the Defendant nursing home or assisted living facility and whose injuries are alleged in the Complaint.

"WHEN A PARTY WITHHOLDS INFORMATION OTHERWISE DISCOVERABLE UNDER THESE RULES BY CLAIMING THAT IT IS PRIVILEGED OR SUBJECT TO PROTECTION AS TRIAL PREPARATION MATERIAL, THE PARTY SHALL MAKE THE CLAIM EXPRESSLY AND SHALL DESCRIBE THE NATURE OF THE DOCUMENTS, COMMUNICATIONS, OR THINGS NOT PRODUCED OR DISCLOSED IN A MANNER THAT, WITHOUT REVEALING INFORMATION ITSELF PRIVILEGED OR PROTECTED, WILL ENABLE OTHER PARTIES TO ASSESS THE APPLICABILITY OF THE PRIVILEGE OR PROTECTION." FLA. STAT. 1.280(b)(6).

Please produce legible copies of the following:

1.  Complete copies of all insurance policies including the following:

    a)  A complete copy of any insurance policy(s) and/or agreement(s) of any kind, including umbrella and excess liability policy(s), which Defendant has or had in force which may provide coverage or provides coverage and/or legal defense fees for any of the acts alleged in Plaintiff's Complaint and/or Presuit Notice;

    b)  If a policy of insurance identified above is a "shared policy," and there have been or are other pending claims being made on that policy, provide a list of the names and addresses of the other claimants and/or their attorneys. If a settlement has been made on a portion of the policy, provide the amount of the settlement and the remaining money left on the policy.

    c)  If a policy of insurance identified above is a "wasting policy," provide a summary of the remaining funds left on the policy, as of the answering of this production.

    d)  If the facility does not have a policy of insurance that provides coverage for this claim, provide any and all documents which show that the facility has complied with the liability insurance requirements set forth in Fla. Stat. 400.141, if applicable.

    e)  If the facility does not have a policy of insurance that provides coverage for this claim, provide any and all documents that show that the Facility has provided notice to the Department of Elderly affairs that the Facility is not in compliance with Florida Statutes and/or Florida Administrative Code.

2.  Complete copies of all administrative documents including the following:

    a)  Each and every contractual agreement between resident and facility (or its affiliated companies) in force during resident's residency;

    b)  Any management contracts in effect during the time the resident was at the facility;

    c)  All policy and procedures manuals maintained by Defendant during resident's residency, which relate to patient care or employee training, and the table of contents for any and all other policy and procedure manuals maintained by Defendant during resident's residency;

    d)  Census documents spanning the duration of resident's residency reflecting the number of patients in the facility on a day to day basis during resident's residency (confidential information contained therein should be redacted);

    e)  Daily census sheets for the wing and unit where the resident resided during the time he/she was at the facility;

    f)  Acuity levels of the patient population spanning the duration of resident's residency;

    g)  Each and every license and certification for Defendant in force during the resident's residency in addition to its AHCA license; and

    h)  Each and every contract in force between Defendant and its medical director during resident's residency.

3.  Complete laser copies of all resident-centric documents including the following "facility records":

    a)  Resident's entire administrative file or "chart";

    b)  Resident's initial comprehensive assessment and periodic comprehensive assessments, including the Minimum Data Set (MDS) and any subsequent modifications to same;

    c)  All comprehensive resident care plan(s) for resident and any subsequent modifications to same;

    d)  Daily aide assignment sheets created during the resident's stay at the facility, redacted to protect the identities, but not the care requirements, of other residents;

e)   24-hour report sheets and any communication books utilized by the staff or employees of the facility during the time period that the resident was at the facility;

f)   All electronic communications and/or information, including e-mails, voice mail, Twitter, texts, faxes, records, orders, evaluations, etc., stored in any manner and in any format concerning the resident;

g)   If the resident was seen by a home health aide, or outside healthcare provider, provide copies of any and all records in the facility's possession, evidencing same;

h)   If the facility has a surveillance system in place, provide copies of all surveillance tapes showing the resident during his/her residency. In the alternative, provide a date and time, in writing, for the Plaintiff's counsel to view the surveillance tapes;

i)   Any and all records of accidents or unusual incidents concerning the resident;

j)   Any and all writings or documents in your possession reflecting any investigations conducted by any state or federal agencies concerning the resident;

k)   All reports, correspondence, or other writings generated by or on behalf of any management company or consultant to the facility concerning the care and treatment of residents during the resident's residency;

l)   Any and all resident family council (or similar entry) minutes, or other documents which record the discussions, agenda, or determinations of the council created during the residency at issue;

m)  Any and all reports or data compilations that concern the status or condition of the resident and were prepared by and sent to corporate officers or supervisors during the residency in question;

n)   "Standing orders," if any, concerning the resident during his/her residency;

o)   Each and every record pertaining to financial matters between resident and facility, including billing for nursing services, invoices, records of payment, etc.;

p)   All notes regarding meetings between resident and his/her visitors; and

q)   All photographs, videotapes, or other documents depicting or portraying resident, resident's visitors and resident with any other person.

4.   Complete copies of all human resource documents including the following:

a)   Corporate policies regarding hiring, retention, and termination of employees in effect during resident's residency;

b)   Documents used for in-service employee training provided at the facility such as employee handbooks, programs, textbooks, videos,  during the time that the resident was at the facility;

c)   Topic list for any in-service employee training spanning the duration of resident's residency;

d)   Any and all in-service training and attendance sheets for all in-service training provided at the facility during the time that the resident was at the facility;

e)   All videos and teaching materials used for in-service training programs during the time that the resident was at the facility;

f)   Documentation, (i.e. personnel files), maintained at the Facility for each employee of the facility who provided any care or service to the resident at the facility, including but not limited to the following information:

   i.   any and all applications for employment;

   ii.  copies of any and all documentation obtained by the facility about the employee from  any third source such as employment verification information from other employers, reports from any law enforcement or state administrative agency or any abuse reporting agency where such document is not privileged by the state or Federal law creating the abuse reporting agency;

       iii.    copies of any and all licensing certification for the employee;

       iv.    any and all documents which would contain disciplinary information of the employee by the facility, including letters of reprimand, complaints by outside persons, or letters of reprimand;

       v.    any and all documents submitted by or recorded by facility, concerning complaints registered by another employee concerning employee;

       vi.    any and all performance evaluations completed for the employee; and

       vii.    any and all forms, letters, or notes relating to termination of the employee's service at the facility, including writings completed by the employee or any other member of the facility's staff or administration.

g)    Turnover reports which delineate the turnover rate for employees of the facility during the time that the resident was at the facility.

5.    Complete copies of all advertising and marketing documents used by the facility referenced in the Complaint during the resident's residency at the facility, including the following:

a)    brochures;
b)    pamphlets;
c)    newspaper advertisements;
d)    direct mail advertisements or solicitations; and
e)    the text of radio and television advertisements.

6.    Each and every document that might support or tend to support each Affirmative Defense.

7.    Complete copies of any and all documents of any kind in Defendant's possession regarding the incident(s) alleged in the complaint that have not already been provided in response to any of the foregoing requests, including but not limited to:  potential witness lists including names and contact information for the resident's roommates, letters, emails, and/or notes taken regarding the incident(s) alleged in the Complaint and/or Presuit Notice and/or resulting from the incident alleged in the Complaint.

8.    Complete copies of any and all documents that may have been referenced or utilized by the Defendant in answering any interrogatories sent to it by Plaintiff.


DATED this 17th day of December 2021.


*/s/ Jack De La Piedra*
Jack De La Piedra
FL Bar No.  0020852
**DE LA PIEDRA LAW FIRM, P.A.**
*Attorney for the Plaintiff*
6 Tristan Way
Pensacola Beach, FL  32561
P  850.932.8560  F  850.932.8129
jack@delapiedralawfirm.com
heather@delapiedralawfirm.com
paralegal@delapiedralawfirm.com